# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 2:09CR00017 |
| v. | **OPINION AND ORDER** |
| JOHN JOEL FOSTER, | By: James P. Jones |
| Defendant. | United States District Judge |

*Ashley B. Neese, Assistant United States Attorney, Roanoke, Virginia, for United States, and Nancy Dickenson, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

The defendant, John Joel Foster, was convicted by a jury in this court of possession of a firearm after having been convicted of a felony. 18 U.S.C.A. § 922(g)(1) (West 2000). He is now before the court for sentencing and the government contends that he qualifies for a sentence enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C.A. § 924(e) (West 2000 & Supp. 2010). The defendant objects, and this opinion resolves the issue.

I

The ACCA provides that a person convicted of a violation of § 922(g), who "has three previous convictions in any court . . . for a violent felony or a serious drug

offense . . . shall be . . . imprisoned not less than fifteen years." *Id.* The term "violent felony" is defined as

> any crime punishable by imprisonment for a term exceeding one year . . . that —
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C.A. 924(e)(2)(B).

The government bears the burden of establishing that a prior conviction qualifies for the ACCA enhancement. *United States v. Goodman*, 519 F.3d 310, 316 (6th Cir. 2008).

In *Taylor v. United States*, 495 U.S. 575, 598 (1990), the Supreme Court held that "burglary" as used in the ACCA meant a felony crime that had the elements of "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." This definition, the Court noted, excluded various state crimes that were called burglaries, but involved a place other than a building or structure, such as an automobile, or a "'booth or tent, or any boat or vessel, or railroad car.'" *Id.* at 599 (referring to Missouri burglary statute).

The Court also determined that where a state burglary statute was broader than the generic definition approved for the ACCA, the sentencing court was limited in the sources of proof that it could consult to determine whether the defendant was actually convicted of the approved generic burglary, or not. *Id.* at 602. This "modified categorical approach" allows the court to consider the "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms," *Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010), but not sources that would require "subsequent evidentiary enquiries" into the basis for the conviction, such as reports of the police investigation. *Shepard v. United States*, 544 U.S. 13, 20 (2005).

In the present case, the government has introduced certain *Shepard*-approved evidence — the indictments and judgment for three prior Virginia burglary convictions — in support of its contention that the defendant is an armed career criminal. Each of the three separate indictments, all returned by a grand jury in the Circuit Court of Lee County, Virginia, in March, 1992, charged a violation of Virginia Code section 18.2-91.

The first indictment alleged that the defendant, on February 25, 1992,

> did unlawfully, feloniously and intentionally break and enter in the nighttime the Sunrise-Sunset Restaurant belonging to Wayne Shubert, with the intent to commit larceny therein.

(Gov't Ex. 3.) The other two indictments similarly charged that on February 28, 1992, and March 13, 1992, respectively, the defendant,

> did unlawfully, feloniously and intentionally break and enter in the nighttime the Corner Market belonging to Ray Rasnic with the intent to commit larceny therein,

(Gov't Ex. 2) and

> did unlawfully, feloniously and intentionally break and enter in the nighttime a blacksmith shop belonging to John Jones, with the intent to commit larceny therein.

(Gov't Ex. 1.)

The defendant pleaded guilty to these indictments on August 19, 1992, and the judgment introduced by the government adds little to the nature of the offenses except that it describes the property stolen by the defendant in these three burglaries. From the Sunset-Sunrise Restaurant, he stole cash; from the Corner Market, he stole cigarettes, beer, and food items; and from the blacksmith shop he stole a set of cutting torches and tools.[1]

---

[1] While the three burglaries occurred in a limited geographical area and time frame, there is no question but that under existing precedent the crimes were committed "on occasions different from one another," and thus potentially qualify under the ACCA. 18 U.S.C.A. § 924(e)(1); *see United States v. Hobbs*, 136 F.3d 384, 390 (4th Cir. 1998) (holding that three burglaries of different victims committed within an hour of each other in a single county qualified under the ACCA).

The defendant was 19 years old when he committed these crimes. He is now 38 years old and has had no intervening felony convictions.

The Virginia statutory burglary statute cited in the indictments and in the judgment of conviction, is "non-generic," in that it includes places other than those found by *Taylor* to be within the meaning of the term "burglary" as used in the ACCA. *United States v. Williams*, 223 F. App'x 280, 283 (4th Cir. 2007) (unpublished). Section 18.2-91 of the Virginia Code, the statute referenced in the indictments in this case, in turn refers to section 18.2-90 for the elements of the crime. That section, as it read at the time of Foster's offenses in 1992, provided that

> If any person in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house or an adjoining, occupied outhouse or in the nighttime enters without breaking or at any time breaks and enters or enters and conceals himself in any office, shop, storehouse, warehouse, banking house, or other house, or any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation . . . shall be deemed guilty of statutory burglary. . . .

Va. Code Ann. § 18.2-90 (Westlaw 1991). Thereafter, in 2004, the statute was amended to remove "office, shop, storehouse, warehouse, banking house, or other house" and replace those words with " building permanently affixed to realty." 2004 Va. Acts ch. 842. Before the language change, the Supreme Court of Virginia had opined that all of the places referred to in the first clause of the definitional part of section 18.2-90 ("office, shop, storehouse, warehouse, banking house, or other house") referred to improvements affixed to the ground, or realty. *Graybeal v.*

*Commonwealth*, 324 S.E.2d 698, 699, 700 (Va. 1985) (holding that mobile homes or house trailers do not fall within the definition of "other house" used in section 18.2-90).

II

The defendant argues that the government has presented no evidence permissible under the qualified categorical approach to construing the ACCA to show that the places he burglarized were buildings or structures. He has presented evidence, for example, that blacksmiths often work out of mobile blacksmith shops, consisting of a mobile trailer carrying tools and equipment, used for delivery of blacksmith services to client locations, such as horse barns or farms.[2]

The government argues that as to the blacksmith shop, the use of the word "shop" in the indictment clearly meant in 1992 a building affixed to the ground, in

---

[2] Of course, some blacksmiths in former times worked out-of-doors entirely, to wit:

> Under a spreading chestnut tree
> The village smithy stands;
> The smith, a mighty man is he,
> With large and sinewy hands;
> And the muscles of his brawny arms
> Are strong as iron bands.

Henry Wadsworth Longfellow, *The Village Blacksmith,* in *Ballads and Other Poems* (1841).

light of the construction of that term by the Virginia Supreme Court in 1985 in *Graybeal*. Another judge of this court recently accepted this argument in *United States v. Baxter,* 677 F. Supp. 2d 918, 920, 921 (W.D. Va. 2010) (Wilson, J.) (holding that a Virginia indictment charging breaking and entering of a "certain shop known as Garland's Northwest" qualified as a ACCA predicate conviction), *appeal docketed*, No. 10-4080 (4th Cir. Jan. 20, 2010).

As to all of the indictments, the government argues that had the places burglarized not been structures affixed to the ground, the indictments would have been required to have alleged, in accord with section 18.2-90, that the places were "used as . . . dwelling[s] or place[s] of human habitation." Va. Code Ann. § 18.2-90. Since the indictments do not include that language, it is argued, it is clear that the places in question were not automobiles, trucks, or trailers.

I agree with the government (and in accord with Judge Wilson in *Baxter*) that the indictment charging Foster with burglary of a blacksmith shop adequately proves that the resulting conviction was for a generic burglary, in light of the Virginia Supreme Court's prior interpretation of the word "shop" as a structure in the context of the state's burglary statute.

However, a different analysis is applicable to the other convictions.

First, I don't agree with the government that the failure of the indictments to charge that the places were used as dwellings or places of human habitation proves that the Sunrise-Sunset Restaurant and the Corner Market were structures affixed to the reality. Other non-structures besides automobiles, trucks, and trailers are included in the scope of the Virginia statute and do not require proof that they were dwellings or places of human habitation. Besides, it is the government's obligation to prove that the place burglarized met the requirements of the ACCA, and the absence of a particular allegation in an indictment is weak proof, if sufficient at all, of the nature of the conviction.

The government relies on an unpublished opinion of the Fourth Circuit in which it held that a Virginia indictment charging burglary of "the business of All American Car Wash" was sufficient proof that the place was a building or structure. *United States v. Shelton*, 196 F. App'x 220, 222 (4th Cir. 2006) (per curiam) (unpublished). While this opinion certainly reflects a more relaxed view of the requirements of the ACCA, the citation of unpublished decisions issued prior to January 1, 2007, is disfavored, 4th Cir. R. 32.1, and accordingly *Shelton* does not control the present case. *See United States v. Hayes*, 482 F.3d 749, 751 n.7 (4th Cir. 2007) (noting that court's unpublished decisions issued prior to January 1, 2007, are

not controlling precedent), *reversed and remanded on other grounds*, 129 S. Ct. 1079, 1089 (2009).

The words describing the places in the two remaining indictments are proper names ("the Sunrise-Sunset Restaurant" and "the Corner Market"), as contrasted to the indictment describing "a blacksmith shop." Even assuming that these proper names were descriptive of the purposes of the places burglarized, restaurants and markets are sometimes conducted in places other than structures affixed to the land. Because the government has the burden of proof, I hold that it has not shown that these two convictions meet the requirements for predicate offenses under the ACCA.

Absent the application of these two convictions, the defendant does not qualify as an armed career criminal, and is not subject to the statutory mandatory minimum sentence of imprisonment.

III

For these reasons, the defendant's objection to his classification as an armed career criminal is sustained. The probation officer will recalculate the defendant's applicable advisory guideline range and advise the court and the parties.

It is so **ORDERED**.

ENTER: August 19, 2010

/s/ JAMES P. JONES
United States District Judge