IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 2:09CR00017 |
| v. | **OPINION** |
| **JOHN JOEL FOSTER,** | By: James P. Jones |
| Defendant. | United States District Judge |

*Ashley B. Neese, Assistant United States Attorney, Roanoke, Virginia; John Joel Foster, Pro Se Defendant.*

The defendant, John Joel Foster, proceeding pro se, filed a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255, challenging his 180-month sentence for possession of a firearm by a convicted felon. Foster alleges multiple claims of constructive denial of counsel and court error and states that his sentence was imposed in an unconstitutional manner. This matter is before me upon the United States' Motion to Dismiss. Foster has responded to the motion, making the matter ripe for disposition. After reviewing the record, I will grant the United States' Motion to Dismiss and dismiss the Motion to Vacate, Set Aside, or Correct Sentence.

## I.

On November 3, 2009, Foster was charged in a one-count Indictment that alleged that Foster possessed a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1), and that he was subject to an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The facts showed that after Foster had been stopped for speeding, a hunting rifle was found in his truck. Foster, then 39 years old, had been convicted of three felonies when he was 19, after he had broken into three separate local businesses and had stolen cash, cigarettes and beer, among other things. He had been placed on probation for those crimes and had no other serious criminal history. Foster had a family and a regular work history.

Foster pleaded not guilty to the federal charge and proceeded to a jury trial that took place on March 4, 2010. The jury found Foster guilty as charged.

Foster's Presentence Investigation Report ("PSR") indicated he was subject to a 15-year mandatory minimum sentence pursuant to the ACCA. The predicate offenses, as outlined in the PSR, were the three prior Virginia burglary convictions 20 years earlier. At the sentencing hearing on July 26, 2010, Foster objected to his classification as an armed career criminal. Foster argued that the government had failed to present sufficient evidence to show that the places burglarized were buildings or structures, a requirement for a predicate burglary under the ACCA.

Following argument, I agreed that the government had failed to show that Foster's burglaries of the Sunrise-Sunset Restaurant and the Corner Market were of buildings or structures. *United States v. Foster*, 732 F. Supp. 2d 649, 652-53 (W.D. Va. 2010). However, I concluded that Foster's conviction for a blacksmith shop burglary met the requirements for a predicate offense, based on the word "shop." *Id.* at 652. On August 31, 2010, I sentenced Foster to 27 months in prison.

The government appealed to the United States Court of Appeals for the Fourth Circuit. A majority of a panel of the Fourth Circuit ruled that Foster's convictions of the burglaries of the Sunrise-Sunset Restaurant and the Corner Market did qualify as predicate offenses and thus it vacated Foster's sentence and remanded for resentencing under the ACCA. *United States v. Foster,* 662 F.3d 291 (4th Cir. 2011). Foster requested a rehearing en banc, which the Fourth Circuit denied on a seven-to-seven tie vote. *United States v. Foster*, 674 F.3d 391 (4th Cir. 2012). The Supreme Court denied certiorari. *Foster v. United States*, 133 S. Ct. 207 (2012).

On remand, I resentenced Foster to the required 180 months of imprisonment under the ACCA. Foster appealed his sentence to the Fourth Circuit, again arguing that his prior convictions were not predicates for the purposes of the ACCA. The Fourth Circuit affirmed. *United States v. Foster*, 526 F. App'x 268, 270 (4th Cir. 2013) (unpublished).

In his present § 2255 motion, Foster alleges the following claims: (1) constructive denial of counsel during a plea bargain with the Commonwealth of Virginia; (2) constructive denial of counsel during his federal trial; (3) constructive denial of counsel at sentencing; (4) constructive denial of counsel on appeal; (5) the ACCA is unconstitutional; (6) the district court exceeded its jurisdiction and incorrectly applied the Modified Categorical Approach; (7) the Fourth Circuit violated Foster's right to due process; and (8) the United States should have been bound by a plea agreement Foster entered into with the Commonwealth of Virginia.

I find that Foster's Motion to Vacate fails and will be dismissed.

II.

A collateral attack under § 2255 may not substitute for an appeal. Claims regarding trial or sentencing errors that could have been, but were not, raised on direct appeal are barred from review under § 2255, unless the defendant shows cause for the default and actual prejudice or demonstrates actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622 (1998). Attorney error can serve as cause for default, but only if it amounts to a violation of the defendant's constitutional right to effective assistance of counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

To demonstrate ineffective assistance of counsel, a convicted defendant must show that counsel's representation was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Courts adopt a "strong presumption" that a counsel's actions fall within the "wide range of reasonable professional assistance." *Id*. at 689. Further, a convicted defendant must show that his counsel's performance was so prejudicial as to "deprive the defendant of a fair trial." *Id*. at 687. To establish this level of prejudice, Foster must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

However, if a convicted defendant can show constructive denial of counsel, he need not demonstrate prejudice under *Strickland*. *See United States v. Cronic*, 466 U.S. 648, 658 (1984) ("There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."); *Strickland*, 466 U.S. at 692 ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."). In *Bell v. Cone,* 535 U.S. 685, 697 (2002), the Supreme Court indicated that a claim "counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole" would fall under the rule of *Cronic*, but a claim that "counsel failed to [challenge the prosecution] at specific points" during sentencing would fall under

*Strickland*. *Id.* at 697; *see also United States v. White*, 341 F.3d 673, 679 (8th Cir. 2003) (observing that *Cronic* applies only when "counsel completely failed to participate in the proceedings").

In a § 2255 motion, the defendant bears the burden of proving his claims by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

### A. Constructive Denial of Counsel.

Foster's allegations of constructive denial of counsel during his state plea bargain, federal trial, federal sentencing, and on appeal have no basis. Foster has alleged no facts showing that counsel completely failed to oppose the prosecution at any stage in the proceeding. *See Lenz v. Washington*, 444 F.3d 295, 303-04 (4th Cir. 2006) (a constructive denial of counsel "arises only when a lawyer entirely fails to subject the prosecution's case to meaningful adversarial testing, and thus might as well be absent from the proceedings") (internal quotation marks and citations omitted). Indeed, counsel for his state charges secured a plea bargain for Foster. Counsel for Foster's federal charges actively participated in the trial, challenged the federal government's position regarding Foster's prior convictions and status under the ACCA at sentencing, and filed an appeal on this issue. As outlined below, Foster's allegations fail to establish a claim for either constructive denial of counsel or ineffective assistance of counsel.

1. State Plea Bargain.

Foster claims that, during an earlier state court prosecution, counsel failed to secure a plea agreement whereby his firearm charge could not be brought in federal court. However, the United States was not a party to the plea agreement between Foster and the Commonwealth of Virginia, and therefore could not be bound to its terms. Moreover, Foster did not raise this claim, either during pre-trial, trial, or post-trial stages in the district court, or on appeal to the Fourth Circuit. Thus, it is procedurally barred from review. Because Foster's arguments lack legal merit, counsel was not ineffective for failing to raise them, nor has Foster shown any prejudice.

2. Federal Trial.

Foster claims that during his federal trial, counsel failed to (a) inform the jury that Foster's father-in-law was illiterate; (b) ensure that the jury was properly instructed on the elements of constructive possession; and (c) properly explain the doctrine of constructive possession to Foster. Foster describes his father-in-law's literacy issue as follows. During trial, the prosecutor asked Foster's father-in-law what type of gun was left in the truck, and his father-in-law responded "a Winchester." (Mot. to Vacate 2, ECF No. 121.) Thereafter, the prosecutor presented the actual gun found in the truck, and his father-in-law identified it as a Winchester, "[e]ven though, the rifle was clearly marked as a Mossenburg-270."

-7-

(*Id.*) Foster claims his father-in-law misidentified the gun because he could not read the weapon's label. Foster argues this led the jury to believe his father-in-law either was "lying about the type of rifle to help [him]" or "that the rifle in the car was a different one than what the father-in-law believed." (*Id.*) Foster insists that if his father-in-law had correctly identified the weapon, the jury would have believed that one of Foster's in-laws had placed the rifle in the truck, which Foster then borrowed, not knowing that it contained the rifle.

Foster further claims that the jury was not properly instructed on the elements of constructive possession, and states, if counsel had explained constructive possession doctrine to him, he could have "direct[ed] counsel to the evidence, which would establish he lacked the requisite knowledge for constructive possession." (Mot. to Vacate 3, ECF No. 121.)

Foster has not shown prejudice from counsel's alleged failures, as required under *Strickland*. *See Cronic,* 466 U.S. at 658 ("[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated."). Even had the jury known that Foster's father-in-law was illiterate, it is not clear it would have accepted this as the reason he misidentified the rifle. Nor does Foster coherently explain how the information

would have changed the trial outcome.  Indeed, the jury could have observed for themselves that Foster's father-in-law failed to read the weapon's label.

Further, the court instructed the jury on the doctrine of constructive possession in Jury Instruction 13.  (Final Jury Instructions 14, ECF No. 45.)  Foster gives no explanation of why the jury instruction was not "proper," or how this instruction might have negatively affected the outcome of his trial.  Finally, while Foster lists certain "evidence which would establish he lacked the requisite knowledge for constructive possession" including the police seizure report and his wife's testimony of "how, why, and when she packed the car" he does not indicate how this evidence would have changed the outcome at trial.  (Mot. to Vacate 3, ECF No. 121.)  While Foster expresses dissatisfaction with some of his trial counsel's decisions, he does not point to any particular action that falls outside of the "wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  Moreover, he has not shown prejudice.  Accordingly, I will dismiss these claims.

### 3. Federal Sentencing.

Foster claims that during his federal sentencing, counsel (a) improperly conceded that a blacksmith shop was necessarily a structure of human habitat; (b) failed to object to the PSR's finding that Foster's underlying breaking and entering convictions were part of the same spree; (c) failed to object to the government's
-9-

introduction of facts related to non-predicate convictions, and (d) failed to argue that Foster's underlying convictions were nonviolent.

Foster could have raised his ineffective assistance claims regarding the blacksmith shop, his underlying convictions for breaking and entering, and the non-predicate convictions on appeal. He failed to raise these claims, and therefore, these claims are procedurally barred from review under § 2255, absent a showing of cause and prejudice or actual innocence. Foster has made no such showing.[1] Accordingly, I will dismiss these claims.[2]

---

[1] In fact, Foster's counsel did not concede that a blacksmith shop was necessarily a structure of human habitat. At the sentencing hearing, counsel presented evidence of mobile blacksmith shops, including photographs of a mobile blacksmith shop in Abingdon, Virginia. (Tr. Sentencing Hr'g 3-7, ECF No. 71.) Also, Foster's argument that his underlying convictions were part of the same crime spree would not likely have been successful on appeal. *See United States v. Mason,* 954 F.2d 219, 221 (4th Cir. 1992) (finding that for the ACCA mandatory sentence to apply, the statute "simply requires that the three predicate crimes were committed on different occasions."). Foster's crimes were committed on three separate days in February and March, 1992, and involved three distinct geographic locations, and three different victims. *See United States v. Hobbs*, 136 F.3d 384, 388 (4th Cir. Va. 1998) (quoting *United States v. Letterlough*, 63 F.3d 332, 335-36 (4th Cir. 1995) ("In engaging in this separate-and-distinct analysis, sentencing courts consider (i) whether the offenses occurred in different geographic locations; (ii) whether the offenses were substantively different; and (iii) 'whether the offenses involved multiple victims or multiple criminal objectives.'").

[2] In Foster's response to the government's Motion to Dismiss, he argues that the issue of whether the three burglaries were part of the same crime spree should have been decided by the jury, not the court. (Resp. to Mot. to Dismiss 13, ECF No. 143.) However, it is not required that a jury determine whether a defendant has a predicate conviction under the ACCA, since the fact of a prior conviction is an exception to the holding of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *See Alleyne v. United States*, 133 S. Ct. 2151, 2160 n.1 (2013).

Foster's argument that he was denied counsel because counsel failed to argue that his underlying convictions were nonviolent fails because the court of appeals has already decided this issue. Foster appealed his 15-year sentence to the Fourth Circuit, arguing that the court erred in concluding that his prior convictions were ACCA predicates. The Fourth Circuit determined to the contrary. Accordingly, that issue cannot be relitigated on collateral review under the circumstances presented in this case. *See, e.g., United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (noting that the law of the case doctrine "forecloses relitigation of issues expressly or impliedly decided by the appellate court"); *Boeckenhaupt v. United States,* 537 F.2d 1182, 1183 (4th Cir. 1976) (noting a petitioner "will not be allowed to recast, under the guise of collateral attack, questions fully considered" on direct appeal).

4. Federal Appeal.

Foster claims that, during his appeal to the Fourth Circuit, counsel (a) identified the standard of review on appeal as de novo, when the proper standard was clear error; (b) failed to argue that the blacksmith shop did not meet the definition of a generic burglary; and (c) conceded a geographical fact which could not otherwise have been introduced into evidence.

Foster's argument regarding the standard of review on appeal fails because the Fourth Circuit has already decided this issue. *Foster*, 662 F.3d at 293 ("We

-11-

consider de novo whether an offense qualifies as a violent felony under the ACCA."). That matter may not be relitigated on collateral review under the circumstances presented in this case. *See, e.g., Bell*, 5 F.3d at 66.

Foster's argument that his counsel provided ineffective assistance by failing to argue on appeal that the blacksmith shop is not a structure for the purposes of the generic burglary statute also fails. If counsel had argued this issue on appeal, the decision in *United States v. Baxter,* 642 F.3d 475 (4th Cir. 2011), would have controlled. The court in *Baxter* found that "the reference to 'shop' in the indictment 'necessarily established' that [the defendant's] burglary conviction was based on his entry into a structure that was 'affixed to the ground." *Id.* at 478. (internal citations omitted). Thus, Foster cannot show prejudice as required under *Strickland* and I will dismiss this claim.

Foster claims his attorney "conceded a geographical fact" during his first appeal, allowing the Fourth Circuit to look beyond the record of appeal. (Mot. to Vacate 5, ECF No. 121). However, Foster does not explain what "geographical fact" counsel allegedly conceded, or how this concession harmed his case. While this court is charged with liberally construing a pleading filed by a pro se litigant to allow for the development of a potentially meritorious claim, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982), a court may not construct the plaintiff's legal arguments

for him, *Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993). Moreover, Foster has failed to show prejudice as required under *Strickland.*

Foster argues that the ACCA is unconstitutional because it is "ambiguous and vague," and "permits arbitrary and random law enforcement" by limiting sentencing discretion. (Mot. to Vacate 6, ECF No. 121.) This argument is procedurally defaulted because it was not raised before the Fourth Circuit on direct appeal.[3]

### B. District Court.

Foster argues that the district court (a) had restricted jurisdiction pursuant to 18 U.S.C. §§ 922(g) and 924(e), and (b) exceeded its jurisdiction by imposing a sentence in excess of 10 years of imprisonment. In his submission titled, "Motion to Reopen" (ECF No. 144), Foster also argues that the court incorrectly applied the modified categorical approach to the ACCA, as clarified by *Descamps v.*

---

[3] I note that the Supreme Court has ordered supplemental briefing and re-argument on the constitutionality of the ACCA's residual clause. *Johnson v. United States*, 135 S. Ct. 939 (2015). However, Foster's case does not involve the residual clause. The residual clause is the part of subsection (ii) of 18 U.S.C. § 924(e)(2)(B) that further defines a violent felony as a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." Foster was sentenced under the first portion of subsection (ii), known as the "enumerated-crimes clause," that refers to "burglary, arson, or extortion [or] involves use of explosives."

*United States,* 133 S. Ct. 2276 (2013), and *Whiteside v. United States*, 748 F.3d 541 (4th Cir. 2014).[4] (ECF No. 144).

Foster could have raised any arguments regarding the jurisdiction of this court on appeal, but did not. Accordingly, these claims are procedurally defaulted and will be dismissed. Further, Foster cannot rely on *Descamps*, because the modified categorical approach was proper in his case, since the state burglary statute did have alternative elements, and not "a simple discrepancy between generic burglary and the crime established [under state law]." *Descamps*, 133 S. Ct. at 2285. Moreover, *Descamps* has not been made retroactive on collateral review. *See, e.g., Wilson v. Warden, FCC Coleman*, 581 F. App'x 750, 753 (11th Cir. 2014) (unpublished).

Finally, Foster's reliance on *Whiteside* is misplaced, since it has no application to the issues in this case. In addition, it rests on the Fourth Circuit's April 8, 2014, panel decision. Foster filed his Motion to Reopen on June 25, 2014, arguing for the application of *Whiteside*. However on July 10, 2014, the Fourth Circuit granted rehearing en banc. *Whiteside v. United States*, 578 F. App'x 218 (4th Cir. 2014) (unpublished). The Fourth Circuit handed down its ruling on December 19, 2014, overturning the panel decision relied on by Foster. *Whiteside*

---

[4] I will treat this document as a motion to amend Foster's motion to vacate, and will grant the motion to amend to the extent that his claims will be addressed in this opinion.

*v. United States*, 775 F.3d 180 (2014) (en banc). Thus, I will dismiss these claims.[5]

### D. Alleged Due Process Violations.

Foster claims that the Fourth Circuit violated his right to due process by (a) using the wrong standard of review, when it should have reviewed fact findings for clear error; (b) affirming the panel's opinion without an en banc hearing; and (c) relying on documents from other cases to conclude that the underlying convictions qualified under the ACCA. These claims all fail because the Fourth Circuit's rulings have become the law of the case and may not be relitigated on collateral review. *See Bell*, 5 F.3d at 66.

### E. Plea Agreement with the Commonwealth of Virginia.

Foster argues that the United States should have been bound by the plea agreement Foster entered into with the Commonwealth of Virginia, including Virginia's agreement to dismiss the firearm charge. This argument is procedurally defaulted, because it was not raised before the Fourth Circuit on direct appeal. Furthermore, as stated previously, the United States was not a party to the plea

---

[5] In Foster's response to the government's Motion to Dismiss, he argues that he is "factually innocent" of violating § 924(e). (Resp. to Mot. to Dismiss 12, ECF No. 143.) To the extent Foster is claiming that, because his prior convictions are not violent, he is actually innocent under the career offender guidelines and the ACCA, I find this argument without merit. *See United States v. Pettiford*, 612 F.3d 270, 282 (4th Cir. 2010) (holding that a petitioner's contention that his prior conviction should not be classified as a violent felony is not cognizable as a claim of actual innocence); *Compare United States v. Mikalajunas*, 186 F.3d 490, 494 (4th Cir. 1999) (finding that a petitioner is factually innocent if he shows that he "did not commit the crime of which he was convicted").

-15-

Case 2:09-cr-00017-JPJ-RSB   Document 145   Filed 05/12/15   Page 15 of 16   Pageid#: 785

agreement between Foster and the Commonwealth of Virginia and was not bound to its terms.

III.

Foster's case is a prime example of why and how injustices are created by the application of mandatory sentences, removing all discretion from the sentencing judge. While I believe that he received a fair trial, I do not believe that Foster's 15-year sentence is appropriate, considering his history and characteristics and the nature of his crime. I continue to regret that the government insisted on such a sentence. Nevertheless, for the reasons I have given, there is no legal ground allowing me to set aside this sentence. Accordingly, I will grant the United States' Motion to Dismiss and dismiss the Motion to Vacate, Set Aside, or Correct Sentence. A separate Final Order will be entered herewith.

DATED: May 12, 2015

/s/  James P. Jones
United States District Judge

-16-

Case 2:09-cr-00017-JPJ-RSB   Document 145   Filed 05/12/15   Page 16 of 16   Pageid#: 786